# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**GEORGE RICHARD MENDOZA,**

      **Plaintiff,**

**vs.**                              **Case No. 4:18cv66-RH/CAS**

**SECRETARY MARK INCH, et al.,**

      **Defendants.**

_____/

## SECOND REPORT AND RECOMMENDATION[1]

The pro se Plaintiff filed a civil rights complaint under § 1983 in late January 2018. ECF No. 1. Service was directed and the three named Defendants have filed separate motions to dismiss. First, the Secretary[2] of the Florida Department of Corrections filed a motion to dismiss asserting that Plaintiff's complaint failed to state a claim. ECF No. 32. Plaintiff was given a deadline to respond to that motion, ECF No. 34, and he filed a

---

[1] A Report and Recommendation, ECF No. 12, was previously entered recommending that Plaintiff's motion for a temporary restraining order and preliminary injunction, ECF No. 10, be denied. The Report and Recommendation was accepted and the motion denied on April 14, 2018. ECF No. 18.

[2] At the time of case initiation, Julie Jones was Secretary of the Department of Corrections and was sued in her official capacity only. ECF No. 1. Mark Inch, the current Secretary, has been substituted as Defendant under Rule 25(d). ECF No. 65.

timely response on July 9, 2018.  ECF No. 37.  Three days later, Plaintiff

filed an amended response in opposition to that motion.  ECF No. 39.

Thereafter, Plaintiff submitted a supplemental response to the Secretary's

motion to dismiss.  ECF No. 56.  That response was not authorized and not

timely submitted.  Because Plaintiff is pro se, an Order was entered

explaining why piecemeal responses were not appropriate.  ECF No. 60.

Plaintiff was given the opportunity to file one document in response to the

Secretary's motion.  *Id.*  He timely filed a second amended response, ECF

No. 62, and only that response has been considered.

A second motion to dismiss was filed by Defendants Access

Corrections ["Access"] and Keefe Group ["Keefe"].  ECF No. 43.  Plaintiff

was advised to respond to that motion, ECF No. 45, and his response was

timely filed. ECF No. 49.

A third motion to dismiss was filed by Defendant Trinity Services

Group, Inc. ["Trinity].  ECF No. 59.  Although that motion was filed

alternatively as a motion to dismiss or a motion for summary judgment,

ECF No. 59, it has been construed only as a motion to dismiss.  ECF No.

60.  Plaintiff was advised of his obligation to respond to that motion and his

response, ECF No. 61, was timely filed.  Each of those motions are now ready for a ruling.

Finally, Plaintiff filed another motion for preliminary injunction or temporary restraining order against the Secretary.  ECF No. 63.  A response has been filed opposing that motion, ECF No. 66, and Plaintiff has filed a reply to the Secretary's response, ECF No. 67.

**Allegations of the Complaint, ECF No. 1**

Plaintiff alleged that the DOC and its venders, Defendants Access, Trinity, and Keefe, advertised an MP3 digital music player with various options and accessories.  ECF No. 1 at 6.  Purchasing the player was to include updates of the latest music releases and the ability to own an unlimited amount of music.  *Id.*  If the purchased music player failed, purchased music could be transferred to a new device and there was no mortality date listed for the player.  *Id.*  Plaintiff purchased a player and accessories on March 29, 2013, and periodically purchased music which, at the time the complaint was filed, totaled over six hundred dollars.  *Id.*

Four years later, in October 2017, inmates were notified that the Florida Department of Corrections was ending its contract with Keefe/Trinity/Access and was entering a new contract with "JPay" to

provide multimedia services.  *Id.* at 6-7.  Due to that change, inmates were directed to mail out their existing music players by January 23, 2019, and were informed they would be required to obtain a new tablet to listen to music.  *Id.* at 7.  Use of the tablet was touted as having more functionality and would enhance the ability to communicate with friends and family.  *Id.* at 7, 8.  However, Plaintiff complains that inmates are not permitted to retain their music player and simply purchase the new tablet.  *Id.* at 9.

Plaintiff subsequently learned that a "mortality timer" had been installed on his music player and it would become non-operational on January 23, 2019.  *Id.* at 7.  Plaintiff alleges that he made a significant investment in the music player and purchasing music.  *Id.*  He contends that inmates were induced into purchasing the player, accessories, and music "with promises" that are not being kept.  *Id.*  He asserts that the "bait and switch" tactic amounts to false representations, false advertising, and fraud.  *Id.*

Plaintiff advises that efforts to resolve this issue through the Department's grievance process was not effective and his proposed alternative solutions were rejected.  ECF No. 1 at 8, 10.  He complains that his purchased music will not be transferred to the new tablets, that he will

not be given a refund, and the mortality device will render his player inoperable.  *Id.* at 11.  He argues that inmates and their families will suffer a financial loss while the Department and its venders have reaped profits. *Id.*  Plaintiff contends that his due process rights have been violated by these arbitrary policies and rules.  *Id.* at 14-15.  He further claims that this is biased treatment that violates his right to equal protection.  *Id.*  He seeks injunctive relief as well as monetary damages.  *Id.* at 13, 16-17.

**Motions to Dismiss**

As noted above, three motions to dismiss Plaintiff's complaint have been filed.  The Secretary contends that the complaint should be dismissed for lack of subject matter jurisdiction.  ECF No. 32 at 3.  The Secretary additionally argues that the complaint fails to state a claim.  *Id.* at 5-10. Finally, to the degree Plaintiff seeks monetary damages, the Secretary raises Eleventh Amendment immunity, *id.* at 10-11, and argues that Plaintiff is not entitled "to any damages as he fails to state a physical injury."  *Id.* at 11-15.

Defendants Access Corrections and Keefe Group [collectively, the "Keefe" Defendants] filed a joint motion to dismiss the complaint brought against them.  ECF No. 43.  Their motion asserts that Plaintiff has failed to

state a claim under 42 U.S.C. § 1983 because they are not state actors. *Id.* at 6-11.  Further, the Keefe Defendants argue that the complaint fails to state a claim under the Deceptive and Unfair Trade Practices Act.  *Id.* at 11-13.  Additionally, they contend Plaintiff's breach of contract claim is improper, not ripe for judicial review, and the damages claim is barred by the physical injury requirement of § 1997e(e).  *Id.* at 13-17.

The motion to dismiss filed by Trinity asserts that dismissal is warranted because Trinity "was not a party to the contract between the [DOC] and Keefe Commissary Network, LLC, doing business as Access Corrections pertaining to statewide digital musical player program services."  ECF No. 59 at 1, 8-10.  Trinity further argues that the complaint fails to state a claim, is not ripe for judicial review, and the damages claim is barred by § 1997e(e).  *Id.* at 10-21.

As many of the arguments raised in the motions to dismiss overlap and are redundant, the issues are addressed together.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to

support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v.

Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting

Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[3]  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct

alleged."  Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at 556); *see

also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010).

"The plausibility standard" is not the same as a "probability requirement,"

and "asks for more than a sheer possibility that a defendant has acted

unlawfully."  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556).  A

complaint that "pleads facts that are 'merely consistent with' a defendant's

---

[3] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

liability," falls "short of the line between possibility and plausibility."  Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").  Pro se complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly, 550 U.S. at 558).  The requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949.  A complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands

more than an unadorned, the-defendant-unlawfully- harmed-me accusation."  556 U.S. at 678, 129 S.Ct. at 1949.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting Twombly, 550 U.S. at 555).  Thus, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

One additional principle bears highlighting: a motion to dismiss does not test the truth of a complaint's factual allegations.  As noted above, factual allegations, though not legal conclusions, must be "accepted as true," Ashcroft, 556 U.S. at 678, 129 S.Ct. at 1949, even when they are "doubtful in fact."  Twombly, 550 U.S. at 555, 127 S.Ct. at 1965.  "Instead, it remains true, after Twombly and Iqbal as before, that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'"  Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993) (quoted in Yawn v. Sec'y of Dep't of Corr., No. 5:13cv228-RH/EMT, 2017 WL 2691423, at *1 (N.D. Fla. June 21, 2017)).

## Analysis

### A.     Subject matter jurisdiction

The Secretary argues that the complaint should be dismissed for lack of subject matter jurisdiction.  ECF No. 32 at 3.  That argument is based on the fact that Plaintiff is complaining of events which "have not yet occurred."  *Id.*  This same argument was also raised by the other Defendants.  ECF No. 43 at 14-16; ECF No. 59 at 18-20.  Defendants argue that because jurisdiction exists only to adjudicate "actual, ongoing cases or controversies," and because Plaintiff has not yet suffered an injury, this case is not ripe for judicial review.  *Id.*

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"  <u>Monsanto Co. v. Geertson Seed Farms</u>, 130 S.Ct. 2743, 2752 (2010) (quoted in <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 409, 133 S. Ct. 1138, 1147, 185 L. Ed. 2d 264 (2013)).  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes-that the injury is certainly impending."  <u>Clapper</u>, 568 U.S. at 409, 133 S. Ct. at 1147 (citation

omitted).  The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient."  *Id.* at 409, 133 S. Ct. at 1147 (citation omitted).

The complaint alleged that Plaintiff would suffer harm in the future due to a contract change.  The date of harm to Plaintiff (January 23, 2019) was due to occur in the future, but the contract on which the change was based had already occurred (October 2017).  ECF No. 1 at 6.  There is no indication that the change in music players was speculative as a mortality timer had already been installed and inmates were directed to arrange for mailing out their current mp3 players.  *Id.* at 5-6.

Additionally, Plaintiff's motion for preliminary injunction (filed on January 15, 2019) makes clear that the issue challenged in his complaint was imminent.  The Secretary's response to Plaintiff's motion confirmed that inmates were advised[4] on January 23, 2018, the "ACCESS MP3

---

[4] The notice advising inmates of this change also informed them of two options for the music already downloaded on their MP3 players: "1) they could send their MP3 player to ACCESS and for a fee of $24.95 ACCESS would permanently disable the security function on the MP3 player. The player would then be mailed to the prisoner's family or designated friend to keep until the prisoner was discharged; or 2) they could send the MP3 players to ACCESS, and for the same fee, ACCESS would transfer all songs to a CD which would then be mailed to the inmate's family or designated friend to

program would cease to exist," but during a "phasing out" period, "kiosks would be removed from institutions precluding inmates from connecting their MP3 players to the kiosks" as required, but permitting inmates to use their MP3 "until January 23, 2019, at which time the MP3 players' security function would lock the devices."  ECF No. 66 at 4.  In this case, Plaintiff's threatened injury was "certainly impending" and there was nothing speculative about the loss of his digital music player.  The arguments that subject matter jurisdiction is lacking and Plaintiff's claims are not ripe for judicial review should be rejected.

The Secretary has also argued that there is "no degree of redressability within this Court" on Plaintiff's issue because this "Court has no power to require a state agency to enter into any specific contract or remain contractually obligated to a specific entity."  ECF No. 32 at 4-5. However, that argument should be rejected at this time.  It is far from clear at this stage of the litigation that providing injunctive relief to Plaintiff, if he were successful in this case, would require this Court to interfere with a DOC contract.  Rather, the issue of Plaintiff's ability to retain property he

---

keep until the inmate was discharged."  ECF No. 66 at 5.

Case No. 4:18cv66-RH/CAS

has already purchased appears to be a matter of DOC policy, not contract.[5]
The motions requesting that Plaintiff's complaint be dismissed for lack of
subject matter jurisdiction on the basis that his claims were not ripe should
be denied.

## B.    Eleventh Amendment immunity

The Secretary asserts entitlement to Eleventh Amendment immunity.
ECF No. 32 at 10-11.  Absent limited exceptions, the State of Florida and
its agencies are immune from suit in this Court by force of the Eleventh
Amendment.  Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir.
1990); see also Kentucky v. Graham, 473 U.S. 159, 169, 105 S. Ct. 3099,
3107, 87 L. Ed. 2d 114 (1985) (reiterating that "absent waiver by the State
or valid congressional override, the Eleventh Amendment bars a damages
action against a State in federal court.").  That "bar remains in effect when
State officials are sued for damages in their official capacity."  Kentucky,
473 U.S. at 169, 105 S. Ct. at 3107; see also Odebrecht Const., Inc. v.
Secretary, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013)
(same).

---

[5] It is also unknown whether it is a DOC policy decision which requires an inmate's
MP3 player to stop working due to the mortality feature.  See ECF No. 1 at 7.

Thus, a suit under § 1983 against a state official sued in his or her official capacity is barred unless it meets one of three exceptions.  The first two exceptions are through a waiver of sovereign immunity.  <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 238, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985).  A state may waive its immunity, or Congress may override a state's immunity pursuant to its power under § 5 of the Fourteenth Amendment.  <u>Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank</u>, 527 U.S. 627, 119 S. Ct. 2199, 2205-06, 144 L. Ed. 2d 575 (1999); <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 55, 116 S. Ct. 1114, 1124, 134 L. Ed. 2d 252 (1996) (concluding "that the type of relief sought is irrelevant to whether Congress has power to abrogate States' immunity.").  In enacting § 1983, Congress did not abrogate a state's immunity, <u>Quern v. Jordan</u>, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed. 2d 358 (1979); <u>Edelman v. Jordan</u>, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974), nor has Florida waived its Eleventh Amendment immunity and consented to suit in federal court under § 1983.  <u>Gamble v. Florida Dep't of Health and Rehab. Servs.</u>, 779 F.2d 1509, 1520 (11th Cir. 1986).

The third exception is through <u>Ex Parte Young</u>, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908).  *See* <u>Idaho v. Coeur d'Alene Tribe of</u>

Idaho, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L. Ed. 2d 438 (1997)

(reaffirming that prospective relief may be sought against a state official in

federal court); Sandoval v. Hagan, 197 F.3d 484, 492 (11th Cir. 1999)

(citing Summit Med. Assoc. v. Pryor, 180 F.3d 1326, 1336-38 (11th Cir.

1999).  Here, Plaintiff seeks prospective injunctive relief as well as

monetary damages.  ECF No. 1 at 13, 16.  The Eleventh Amendment does

not bar Plaintiff's request for injunctive relief, but the Secretary's motion to

dismiss, ECF No. 32, should be granted as to Plaintiff's request for

monetary damages.

## C.    Monetary damages

All Defendants assert that Plaintiff is not entitled "to any damages as

he fails to state a physical injury."  ECF No. 32 at 11; *see also* ECF No. 43

at 16, ECF No. 59 at 20.  That is incorrect.  "[N]othing in § 1997e(e)

prevents a prisoner from recovering nominal damages for a constitutional

violation without a showing of physical injury."  Brooks v. Warden, 800 F.3d

1295, 1307-08 (11th Cir. 2015).  Furthermore, the statute upon which

Defendants rely provides: "No Federal civil action may be brought by a

prisoner confined in a jail, prison, or other correctional facility, *for mental or

emotional injury* suffered while in custody without a prior showing of

physical injury or the commission of a sexual act . . . ."  42 U.S.C. §

1997e(e) (emphasis added).  Section 1997e(e) bars a "claim seeking

compensatory damages for emotional distress suffered while in custody."

Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003).  The statute does

not specifically preclude an inmate from seeking compensatory damages

for an actual injury such as the loss of property.  At this point in the

litigation, that argument should be rejected.

**D.     Equal protection claim**

The Secretary contends that Plaintiff's equal protection claim is

insufficient because there are no allegations in the complaint which reveal

a discriminatory intent to treat other prisoners more favorably.  ECF No. 32

at 5-7.  Additionally, the motion to dismiss points out that "[m]erely treating

similarly situated inmates disparately, without more, fails to state a claim for

a violation of the Equal Protection Clause."  *Id.* at 6 (citations omitted).

"The Equal Protection Clause of the Fourteenth Amendment provides

that '[n]o State shall . . . deny to any person within its jurisdiction the equal

protection of the laws.'" U.S. Const. amend. XIV, § 1 (quoted in Smith v.

Governor for Alabama, 562 F. App'x 806, 814 (11th Cir. 2014).  To

"establish an equal protection claim, a prisoner must demonstrate that (1)

'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986)).  "Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (cited in Smith, 562 F. App'x at 814).

Here, Plaintiff's equal protection claim is based on a policy which is applicable to all inmates.  Construed liberally, Plaintiff's claim is premised on the impact of that policy on prisoners who are serving life sentences. Plaintiff acknowledges that all prisoners are permitted to send their music players home, but inmates serving a "life sentence" or "with an outrageous parole date," see ECF No. 1 at 15, will never be able to repossess their music because they will not be released from prison.  Thus, Plaintiff's claim is that the policy has a disparate impact on life-sentenced inmates.

Plaintiff's disparate impact claim, however, cannot succeed because "proof of discriminatory intent or purpose is a necessary prerequisite to any

Equal Protection Clause claim."  Parks v. City of Warner Robins, Ga., 43

F.3d 609, 616-17 (11th Cir. 1995) (citing Hernandez v. New York, 500 U.S.

352, 359-60, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) ("A court

addressing this issue must keep in mind the fundamental principle that

'official action will not be held unconstitutional solely because it results in a

racially disproportionate impact.... Proof of racially discriminatory intent or

purpose is required to show a violation of the Equal Protection Clause.'"

(omission in original) (quoting Arlington Heights, 429 U.S. at 264-265, 97 S.

Ct. at 563)).  A disproportionate or disparate impact alone that is an

"obvious consequence" of a facially neutral policy or rule is still insufficient

without "a showing of discriminatory intent."  Parks, 43 F.3d at 617; *see*

*also* McCleskey v. Kemp, 753 F.2d 877, 892 (11th Cir. 1985), *aff'd*, 107 S.

Ct. 1756 (1987).  Plaintiff's complaint alleges no facts which demonstrate a

discriminatory intent or purpose.  Because the claim is based on impact

alone, the motions to dismiss Plaintiff's equal protection claim should be

granted.

**E.    Florida Deceptive and Unfair Trade Practices Act claim**

The Defendants also assert that Plaintiff's complaint is insufficient to

state a claim under the Florida Deceptive and Unfair Trade Practices Act

["FDUTPA"].  ECF Nos. 32 at 8-10; 43 at 11-13; 59 at 15-17.  They point

out that alleging a "bait and switch" practice alone, without pointing to any

unfair or deceptive practices, is insufficient to state a claim.  *Id.*

"FDUTPA prohibits '[u]nfair methods of competition, unconscionable

acts or practices, and unfair or deceptive acts or practices in the conduct of

any trade or commerce.'"  Fla. Stat. § 501.204(1) (quoted in Carriuolo v.

Gen. Motors Co., 823 F.3d 977, 983 (11th Cir. 2016)); State Farm Mut.

Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC, 278 F.

Supp. 3d 1307, 1326 (S.D. Fla. 2017).  "The elements comprising a

consumer claim for damages under FDUTPA are: (1) a deceptive act or

unfair practice; (2) causation; and (3) actual damages."  Carriuolo, 823

F.3d at 983 (citation omitted).  "To satisfy the first element, the plaintiff

must show that 'the alleged practice was likely to deceive a consumer

acting reasonably in the same circumstances.'"  823 F.3d at 983-84

(citation omitted).  An objective test is used to determine whether a

challenged "practice was likely to deceive a consumer acting reasonably"

and a plaintiff "need not show actual reliance on the representation or

omission at issue."  *Id.* at 984.

The Secretary argued that "Plaintiff has not demonstrated an unfair, nor deceptive practice."  ECF No. 32 at 9.  However, the other Defendants acknowledge that Plaintiff's complaint alleged that Defendants made false representations in the advertisements he relied upon when purchasing the mp3 player and music.  ECF No. 43 at 11; ECF No. 59 at 15.  Plaintiff alleged that the "Department of Corrections and its vendors" advertised the mp3 player.  ECF No. 1 at 6.  Plaintiff alleged that the services offered included a promise that he could "own unlimited music" and Access Corrections would store all purchased songs, including deleted songs, and "give them back" to him whenever he desired "for free."  *Id.*  If the player ceased to function, the music would "be transferable to a new device, and there was absolutely no mortality (end) date advertised in advance."  *Id.*  Plaintiff alleged that those assurances were false representations and that he relied upon those statements to his detriment.  *Id.* at 7.  Plaintiff alleged that all Defendants participated in the advertisement and sale of the mp3 "player, accessories, and music with no advance representation that we could only possess these items until January 23, 2019 . . . ."  *Id.* at 14.

"A practice is unfair under the FDUTPA if it offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous, or substantially

injurious to consumers.'"  <u>State Farm Mut. Auto. Ins. Co.</u>, 278 F. Supp. 3d

at 1326 (citation omitted).  "A deceptive act occurs when a defendant

makes 'a representation, omission, or practice that is likely to mislead the

consumer acting reasonably in the circumstances, to the consumer's

detriment.'"  278 F. Supp. 3d at 1326-27 (citation omitted).  "Importantly,

'deception may be accomplished by innuendo' and through omissions

'rather than outright false statements.'"  *Id.* at 1372.  Construing Plaintiff's

complaint liberally, and accepting the allegations as true, Plaintiff has

sufficiently alleged a claim under the FDUTPA.  He alleged that he was

misled and deceived into believing he could retain his player and music

and listen to his purchased music at any time in the future.  That is enough.

Defendant Trinity specifically asserted that Plaintiff "failed to set forth

any facts that could establish a violation of FDUTPA by Trinity and,

consequently, he fails to state a claim under FDUTPA."  ECF No. 59 at 15.

In response to that motion, Plaintiff states that Defendants "Keefe Group,

Trinity Services, Group, [and] Access" are "a quagmire of companies

working jointly in collusion" and he contends that in discovery, he will obtain

probative evidence to support his claims.  ECF No. 61 at 9-10.  Plaintiff's

complaint alleged that all Defendants were jointly involved in the

Case No. 4:18cv66-RH/CAS

advertising and sales of the mp3 player and music, and all denied him a reasonable alternative to rendering his purchases useless. *Id.* at 6-8. As stated above, Plaintiff's allegations present a plausible claim under FDUTPA.

To the degree Trinity contends that it was not, and is not, a party to the contract between the Florida Department of Corrections and the other venders, ECF No. 59 at 8-9, that argument must be denied at this stage of the litigation. A motion to dismiss does not test the truth of a complaint's allegations. Instead, the factual allegations must be accepted as true. Ashcroft, 556 U.S. at 678, 129 S. Ct. at 1949. Trinity may test the truth of Plaintiff's allegations in a motion for summary judgment.

Additionally, the Secretary has argued that Plaintiff "has no right, constitutional or otherwise, to the service which he alleges Defendant has decided to end." ECF No. 32 at 9. That argument confuses a constitutional claim with a statutory claim. The FDUTPA claim is not based on whether a plaintiff has an underlying constitutional right. It is immaterial whether a prisoner has a right to purchase music, spend money in a canteen, and the like. ECF No. 32 at 9-10.

Furthermore, Plaintiff's responsive argument that he has "a right secured by the laws of the United States which is to 'not' be deceived and defrauded" is incorrect.  ECF No. 49 at 6.  *See, e.g.,* Lewis v. United States, 385 U.S. 206, 210, 87 S. Ct. 424, 427, 17 L. Ed. 2d 312 (1966) (holding that deceptions of law enforcement are not constitutionally prohibited); Frazier v. Cupp, 394 U.S. 731, 739, 89 S. Ct. 1420, 1425, 22 L. Ed. 2d 684 (1969) (holding that police misrepresentations did not render suspect's confession inadmissible); United States v. Castaneda-Castaneda, 729 F.2d 1360, 1363 (11th Cir. 1984) (police officer's use of a trick" did not "render a confession involuntary"); United States v. Grossman, 233 F. App'x 963, 967 (11th Cir. 2007) (use of a "ruse" did "not diminish the non-coercive nature of the interview").  Plaintiff does not have a constitutional right to not be deceived, but he does have a statutory right under FDUTPA to not be misled into purchasing goods by unfair or deceptive practices.

Plaintiff's complaint alleged a violation of the FDUTPA because he was deceived into believing that he would always be able to access his purchase music and that he could retain an mp3 player the Department permitted him to purchase.  He alleged that advertisements giving such

promises were made, and that he relied on them to his detriment in the amount of $741.42.  The motions to dismiss this claim should be denied.

## F.   Failure to state a § 1983 claim

The Keefe and Trinity Defendants have argued that Plaintiff's constitutional claims[6] against them cannot proceed because they are not "state actors" for purposes of 42 U.S.C. § 1983.  ECF Nos. 43 at 6-11; 59 at 10-15.  In response, Plaintiff contends the State "significantly encouraged the Defendant(s) to advertise and sell" him and other prisoners mp3 players and music, and that the State and all Defendants profited from those sales.  ECF No. 49 at 7-8.  Plaintiff argues that the State "was a joint participant" with the private companies and engaged in collusion to render his device non-operational.  *Id.* at 10-12; *see also* ECF No. 61 at 18-19.

"Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 924, 102 S. Ct. 2744, 2747, 73 L. Ed. 2d 482 (1982); *see*

---

[6] These Defendants recognize that Plaintiff has alleged both an equal protection and due process claim.  ECF Nos. 43 at 6, 59 at 10.

*also* Flagg Bros. v. Brooks, 436 U.S. 149, 156, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978) (explaining that even though the actions of a private person may deprive a person of a constitutional right, "he may be subjected to liability under § 1983 only when he does so under color of law"). However, a private party's "joint participation with a state official in a conspiracy" may constitute "state action" for purposes of § 1983.  Lugar, 457 U.S. at 931, 102 S. Ct. at 2750; Cobb v. Georgia Power Co., 757 F.2d 1248, 1250 (11th Cir. 1985) (stating that where a private party is "acting either jointly with or through state officials," the "private party is held to have acted under color of state law").

In evaluating whether a private creditor's use of garnishment and prejudgment attachment procedures violated federal constitutional standards of due process, the Supreme Court found that the "private use of the challenged state procedures with the help of state officials constitutes state action for purposes of the Fourteenth Amendment."  457 U.S. at 933, 102 S. Ct. at 2751.  In this case, Plaintiff alleged that all Defendants were joint participants in the advertisement and sale of the mp3 players and music.  Moreover, all Defendants are alleged to have conspired together to deprive Plaintiff of his property.  Plaintiff alleged that at the time he

purchased his player and music, there was no mention of a "mortality end date" which would "shut off and" render his player "inoperable." After making purchases for a number of years, it appears that a DOC policy or rule was created requiring Plaintiff to mail the player home to family. Plaintiff alleged that simultaneously with the creation of that policy, the private parties acted to prevent Plaintiff from continuing to enjoy his music by installing a mortality timer on the player and requiring him to pay additional money if he wanted to obtain his music in the future. Thus, Plaintiff has alleged that the private parties were willing participants in a "joint activity." Motes v. Myers, 810 F.2d 1055, 1058-59 (11th Cir. 1987) (concluding that private parties who are willing participants in joint activity with the State or its agents are acting 'under color' of law for purposes of § 1983).

Where "there is an allegation of a conspiracy between a state officer and a private party, the jurisdictional state action requirement may be met." Cobb, 757 F.2d at 1251 (citing Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Plaintiff's allegation of a conspiracy and joint action distinguish this case from the cases cited by Defendants which hold that private parties operating canteens or selling commissary items are not

acting under color of state law.  *See* ECF Nos. 43 at 8-9, 59 at 12-13.  At this stage of the litigation, it appears that Plaintiff has sufficiently alleged facts upon which to find that the private Defendants were acting under color of state law.  The motion to dismiss the private Defendants from the § 1983 due process claim should be denied.

## G.   Breach of contract claim

Defendants assert that Plaintiff's breach of contract claim is improper because he was "not a party to any alleged contract between the FDOC and Defendants . . . ."  ECF No. 43 at 13-14; ECF No. 59 at 17-18.  It is also argued that Plaintiff did not allege "any specific contractual provisions that Defendants allegedly breached."  ECF No. 43 at 14.

It appears that Defendants misinterpreted Plaintiff's breach of contract claim.  Plaintiff is not asserting that Defendants breached a contract between themselves.  ECF No. 43 at 13-14; ECF No. 59 at 17-18.  Rather, Plaintiff contends that he had a contract with the Defendants to purchase present and future goods.  *Id.*  Plaintiff states that he accepted Defendants' offer to sell, he gave consideration for the offer by paying an agreed price for the music, accessories, and the player, and that Defendants have breached that contract.  ECF No. 49 at 14-16.  Plaintiff

alleges that despite purchasing music and the mp3 player, Defendants have rendered his player inoperable and have prevented him from enjoying the music he already purchased. *Id.* at 14-15.

A claim for breach of contract, like the FDUTPA claim, is a state law claim.[7]  Federal district courts have jurisdiction over such supplemental claims.  28 U.S.C. § 1367.  "Under Florida law, a breach of contract claim requires the plaintiff to plead formation of a contract, including offer, acceptance, consideration, and essential terms; material breach; and damages."  Garcia v. Diaz, No. 17-10841, — F.App'x —, 2018 WL 5793430, at *3 (11th Cir. Nov. 5, 2018).  Although inartful, the pro se Plaintiff pled facts in his complaint which support a breach of contract claim.  In general, Plaintiff alleged that he had a contractual relationship with the Defendants who offered to sell music and a player, would store such music and make it available for future listening, and would transfer the music to a new player if that one ceased to function.  Plaintiff agreed to the terms and purchased numerous goods over several years.  He contends that Defendants breached the terms of that contract.  Because Defendants

---

[7] A "'[c]ontract for sale' includes both a present sale of goods and a contract to sell goods at a future time."  FLA. STAT. § 672.106(1).

misinterpreted the basis for Plaintiff's claim, they have not presented

sufficient basis to dismiss this claim.  Nevertheless, Plaintiff appears to

have adequately alleged a breach of contract claim and the motions to

dismiss this claim should be denied.

## H.    Due process claim

In addition to the claims discussed above, Plaintiff's complaint raised

a due process claim.  ECF No. 1 at 15.  The Secretary has not addressed

that claim.  *See* ECF No. 32.  The other Defendants acknowledged the

claim, *see* ECF Nos. 43 at 4, 59 at 4, but did not address it.  Accordingly,

Plaintiff's due process claim should go forward.

## I.    Plaintiff's second motion for a preliminary injunction

Plaintiff seeks a temporary restraining order or preliminary injunction

against the Secretary to prevent prison officials from taking (confiscating)

his mp3 player and music.  ECF No. 63.  Plaintiff's motion, filed on January

15, 2019, advised that the Secretary established January 23, 2019, as the

date "to confiscate and force the plaintiff to mail out his mp3 player device,

accessories and music in violation of [his] due process rights."  *Id.* at 2.

Plaintiff contends that he will suffer "irreparable harm" because he will be

unable to regain his player and music, and he argues that "the continuing

deprivation of Constitutional rights constitutes irreparable harm." *Id.* at 2-3. In balancing the hardships, Plaintiff contends that Defendants will suffer no harm and he will suffer property loss. *Id.* at 3-4. He argues that he has "a great likelihood of success on the merits" and that it is in the public's interest to require "prison officials to obey the law, especially the Constitution." *Id.* at 4.

Granting or denying a preliminary injunction is a decision within the discretion of the district court. <u>Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd.</u>, 112 F.3d 1125, 1126 (11th Cir. 1997) (citing <u>United States v. Lambert</u>, 695 F.2d 536, 539 (11th Cir. 1983)). Preliminary injunctive relief may be granted only if the moving party establishes:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat of irreparable injury unless the injunction issues;

(3) the threatened injury to the movant outweighs whatever harm the proposed injunction may cause the opposing party; and

(4) granting the injunction would not be adverse to the public interest.

<u>Keeton v. Anderson–Wiley</u>, 664 F.3d 865, 868 (11th Cir. 2011); <u>Carillon Importers, Ltd.</u>, 112 F.3d at 1126; <u>United States v. Jefferson Cnty.</u>, 720

F.2d 1511, 1519 (11th Cir. 1983).  To be entitled to a preliminary injunction,

a plaintiff must demonstrate all four prerequisites.  Siegel v. LePore, 234

F.3d 1163, 1176 (11th Cir. 2000); Jefferson Cnty., 720 F.2d at 1519 (citing

Canal Auth. v. Callaway, 489 F.2d 567 (5th Cir. 1974)).

In response to Plaintiff's motion, the Secretary has explained that in

November of 2017, the DOC "decided not to renew a contract" for canteen

services which included "the MP3 music download/player program."  ECF

No. 66 at 4.  Inmates were informed that:

> 1) the ACCESS MP3 program would cease to exist on or about
> January 23, 2018;
>
> 2) as the program was phasing out, ACCESS kiosks would be
> removed from institutions precluding inmates from connecting
> their MP3 players to the kiosks as required periodically to
> extend the security timer feature incorporated into their MP3
> players; [and]
>
> 3) inmates could connect their MP3 players to the kiosks and
> the security function of the players would be extended until
> January 23, 2019, at which time the MP3 players' security
> function would lock the devices.

ECF No. 66 at 4.  Inmates were advised of only two available options.  Id.

at 5.  Option one was to send their mp3 player to ACCESS and pay $24.95

to have the security function permanently disabled and the player would

"be mailed to the prisoner's family or designated friend to keep until the

prisoner was discharged." *Id.* Option two was to send the mp3 player "to

ACCESS, and for the same fee, ACCESS would transfer all songs to a CD

which would then be mailed to the inmate's family or designated friend to

keep until the inmate was discharged." *Id.*

The Secretary argues, first, that the terms of the contract for Plaintiff's

purchase of music requires that any action arising out of that contract must

be brought in a "court of competent jurisdiction sitting in Saint Louis

County, Missouri." ECF No. 66 at 13-14. Thus, it is argued that this Court

lacks jurisdiction to rule on Plaintiff's motion. *Id.* at 14.

That argument should be rejected for several reasons. First, the

Secretary now raises an argument that was not raised in any of the

motions to dismiss. A motion to dismiss based upon a contractual forum

selection clause defense is properly brought under Rule 12(b)(3) as a

motion to dismiss for improper venue. *See, e.g.,* Digital Envoy, Inc. v.

Google, Inc., 319 F. Supp. 2d 1377, 1379 (N.D. Ga. 2004). However, such

a motion is waived if omitted from an initial Rule 12(b) motion. Rule 12(g)

provides that "a party that makes a motion under this rule must not make

another motion under this rule raising a defense or objection that was

available to the party but omitted from its earlier motion." Fed. R. Civ. P.

12(g)(2); *see* <u>Cooney v. Barry Sch. of Law</u>, No. 614CV106ORL22KRS,

2014 WL 12616979, at \*2 (M.D. Fla. Oct. 30, 2014) (citing Rule 12(g)(2)).

No party raised a forum selection clause in the initial motions to dismiss.[8]

Secondly, it is more appropriate to transfer a case rather than dismiss

it, at least in cases in which transfer is not impossible.  <u>Digital Envoy</u>, 319

F. Supp. 2d at 1379.  Transfer between two federal courts in the United

States is not impossible.  Thus, Plaintiff's motion for a preliminary injunction

should not be denied based on the forum selection clause of the purported

contract.

The Secretary also argues that Plaintiff has not shown irreparable

harm.  ECF No. 66 at 14-15.  Plaintiff's complaint expressly sought an

award of monetary damages.  ECF No. 1 at 16.  He wanted to be "fully

compensated" by an award of $741.42, plus expenses.  *Id.* at 16-17.

"Irreparable injury 'is the *sine qua non* of injunctive relief.'"  <u>Siegel</u>, 234

F.3d at 1176 (quoted in <u>Jernard v. Commissioner, Ga. Dep't of Corrs.</u>, 457

---

[8] Not only was that defense not raised, the private Defendants did not view Plaintiff's breach of contract claim as pertaining to any contract with them.  ECF No. 43 at 13-14; ECF No. 59 at 17-18.  Rather, Defendants argued that Plaintiff "was not a party to any alleged contract between the FDOC and Defendants, and Plaintiff has not alleged any facts that demonstrate that Defendants entered into any formal agreement with the Plaintiff."  ECF No. 43 at 114; *see also* ECF No. 59 at 18..

F.App'x 837, 839 (11th Cir. 2012)).  The availability of monetary damages means that Plaintiff has not shown irreparable injury.  Jefferson Cnty., 720 F.2d at 1520 (finding "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Moreover, Plaintiff has not shown that even if he were required to mail out his mp3 player during the course of this litigation, and should Plaintiff prevail at trial, Plaintiff could presumably have his mp3 player returned to him as injunctive relief.   Thus, it does not appear that the loss of his player would be irreparable.  Plaintiff's second motion for preliminary injunctive relief should be denied.

It is respectfully **RECOMMENDED** that: (1) Plaintiff's motion for a temporary restraining order and preliminary injunction, ECF No. 63, be **DENIED;** (2) the motion to dismiss filed by the Secretary, ECF No. 32, be **GRANTED in part** as to the Eleventh Amendment immunity claim, and **GRANTED** as to Plaintiff's equal protection claim but otherwise **DENIED**; (3) the motion to dismiss, ECF No. 43, filed by Defendants Keefe Group and Access Corrections, be **GRANTED** as to Plaintiff's equal protection claim but otherwise **DENIED**; (4) the motion to dismiss filed by Defendant

Trinity Services Group, Inc., ECF No. 59, be **GRANTED** as to Plaintiff's

equal protection claim but otherwise **DENIED**, and this case be

**REMANDED** to the undersigned for further proceedings.

      **IN CHAMBERS** at Tallahassee, Florida, on February 20, 2019.


    S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**




**NOTICE TO THE PARTIES**

      **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**