IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GEORGE RICHARD MENDOZA,

    Plaintiff,

v.                                        CASE NO. 4:18-cv-66-RH-GRJ

SEC'Y MARK S. INCH, et al.,

    Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is Defendant Keefe Commissary Network's ("KCN") Motion for Summary Judgment. ECF No. 136. Plaintiff, proceeding *pro se*, filed a response in opposition, ECF No. 146, and KCN filed a reply memorandum in support of its initial motion, ECF No. 149. The motion, therefore, is ripe for consideration. For the reasons discussed below, it is respectfully **RECOMMENDED** that KCN's Motion for Summary Judgment should be **GRANTED**.

### I. BACKGROUND

Plaintiff is an inmate in the custody of the Florida Department of Corrections ("DOC"), serving a prison sentence of life without parole since

1985 for convictions in Miami-Dade County.[1] KCN is a commissary vendor that sells products to inmates, sometimes under the name "Access Corrections." ECF No. 136-1 at 1–2.

DOC previously contracted with KCN to administer the "Access Media Program," thereby allowing KCN to advertise and sell to inmates digital media devices and corresponding media files. *Id.* at 2. As early as July 2011,[2] KCN advertised the sale of the "Amp'd Maxx MP3 Player," accessories, and prepaid media/song credits in a flyer to DOC inmates. ECF No. 4 at 25. The advertisement stated that DOC was "NOW ACCEPTING ORDERS"—using an order form on the back of the flyer— and touted that an inmate could purchase "[u]nlimited music," that is, there is "no limit to the songs [an inmate] can own!" *Id.*; *see also id.* ("With Maxx, once you purchase the music, you will always own it.").

In late March 2013, Plaintiff purchased a digital media player and accessories as part of the Access Media Program. ECF No. 1 at 6; ECF No. 136-1 at 7. When an inmate, such as Plaintiff, first receives a digital media player, the inmate must connect the player to a KCN kiosk located at

---

[1] The Court has "wide discretion" to take judicial notice of adjudicative facts, such as public or court records, at the summary judgment stage. *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014).

[2] KCN's later advertisements for the Access Media Program, which included materially identical representations, are part of the summary judgment record. ECF No. 136-8.

the DOC facility.  ECF No. 136-1 at 2.  Upon connection, the kiosk downloads to the media player a music catalogue and an "End User License" agreement ("EUA") for the Access Media Program's "permanent music downloads."  *Id.*  The EUA is downloaded as an audio file, rather than in writing, so that inmates my apprise themselves of the conditions of the agreement even if they have difficulty reading.  *Id.* at 3.

The EUA warns inmates that "[b]y purchasing permanent downloads through the Access Service, [the inmate is] indicating that [he or she has] listened to and/or read these terms of sale, [the inmate] understand[s] them, and [the inmate] consent[s] to be bound by all of the terms and conditions contained [therein]."  *Id.* at 10.  The EUA refers to "[p]ermanent downloads" as "owned by Access or its licensers, content owners" and makes clear that "payment of the permanent download fee" entitles the inmate to "a nonexclusive, nontransferable right to use the permanent download in accordance with the following usage, usage rules, and subject to the provisions of these terms of sale and the terms of use."  *Id.* at 10–11.  The EUA further advises inmates that "conditions of [an inmate's] stay as imposed by the facility, agency, or any managing entity, may impose further restrictions on any permanent download" and that an inmate will not be credited when any such restriction requires removal or blocked "access" to

3

"one or more permanent download." *Id.* at 11.  The sale of permanent downloads are "final," and inmates "do not have the right to withdraw from a purchase once [an inmate] begin[s] to download content from the access service" and does not have "a right to cancel [the] contract once the download commences." *Id.* at 12.

Plaintiff proceeded to purchase 360 digital media files at a cost of $1.70 each.  *Id.* at 7.  Had Plaintiff elected to not agree to the EUA by purchasing his first media file and wished to return his media player, accessories, and prepaid credits, KCN would have refunded him.  *Id.* at 4.

In November 2017, DOC did not renew its contract with KCN to administer the Access Media Program.  ECF No. 136-2 at 4; ECF No. 136-3 at 5.  DOC advised inmates sales under the Access Media Program would cease on December 15, 2017, in favor of a "Statewide Multimedia Kiosk/Tablet Program" with vendor JPay.  ECF No. 136-4.  To facilitate the termination of the Access Media Program, DOC initiated internal security timers in each purchased digital media player, effectively disabling the use of the media players on January 23, 2019.  ECF No. 136-1 at 4–5.  Consequently, KCN provided inmates two options to maintain ownership—but not continued possession—of their digital media players and downloaded media.  *Id.* at 5.  First, the inmate could send his media player

4

to KCN to have the internal security features disabled, and KCN would return the media player to a non-prison address.  *Id.*  Second, the inmate could have "all of [his or her] purchased digital media, stored on [the] digital player and/or Keefe's remote server" downloaded to a CD-ROM and mailed to a non-prison address.  *Id.*  DOC and KCN warned inmates about these options and the process to terminate the Access Media Program.  ECF No. 4 at 38; ECF No. 136-8 at 2.

Plaintiff did not return his digital media player to KCN, nor has he, or anyone on his behalf, elected either option described above to return his digital media player or downloaded media to a non-prison address.  ECF No. 136-1 at 7.  Instead, Plaintiff grieved the termination of the Access Media Program to prison administration, DOC, and KCN.  ECF No. 4 at 40–82.  When those grievances were unsuccessful, he filed this lawsuit against DOC Secretary Mark S. Inch and KCN.

In the operative complaint, Plaintiff asserted constitutional claims under the Due Process and Equal Protections Clauses pursuant to 42 U.S.C. § 1983, as well as state-law claims for breach of contract and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204(1), for monetary damages and injunctive and declaratory relief.  ECF No. 1.  The gravamen of Plaintiff's claims is

that he was not forewarned that his use—or, as he puts it, ownership—of the Access Media Program's digital media player and downloaded media would be subject to abrupt termination based on a contract between DOC and KCN. Moreover, Plaintiff has asserted that KCN's options to maintain "ownership" of the digital media player and downloaded media are illusory because he is serving a life sentence without the possibility of parole.

At the motion-to-dismiss stage, the Court held that Secretary Inch "cannot be held liable for damages under § 1983[,]" but Plaintiff "is entitled to proceed with the § 1983 due process claim for injunctive and declaratory relief." ECF No. 70 at 3. The Court, however, dismissed Plaintiff's equal protection claim for failure to state a claim and his state-law claims against Secretary Inch in his official and individual capacities. *Id.* at 3–4. In sum, Plaintiff's only surviving cause of action against Secretary Inch is his due process claim for injunctive and declaratory relief. The Court further held that Plaintiff may proceed on his FDUTPA, breach of contract, and due process claims against KCN. *Id.* at 4 (adopting the magistrate judge's report and recommendation granting in part and denying in part Defendants' motions to dismiss, ECF No. 68).

## II.  LEGAL STANDARD

The entry of summary judgment is appropriate when the Court is satisfied "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the movant bears the initial burden of establishing the nonexistence of a triable issue of fact.  This, however, does not require the movant to disprove matters on which the non-moving party bears the burden of proof at trial.  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994).  "[T]he moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *United States v. Four Parcels of Real Property in*

*Green and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 (11th Cir. 1991) (alterations adopted).

If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

## III.  DISCUSSION

KCN moves for summary judgment on Plaintiff's breach of contract, FDUTPA, and constitutional (due process) claims. The Court will address each in turn.

## A.    Breach of Contract

KCN argues it is entitled to summary judgment because the undisputed record demonstrates that Plaintiff has failed to establish a breach of the EUA or any actual damages resulting therefrom. ECF No. 136 at 17–18. Plaintiff says that the EUA is immaterial to his breach-of-contract claim because the "contract" in issue is KCN's advertisement for the Access Media Program. ECF No. 146 at 17, 20–21. This same confusion arose at the motion-to-dismiss stage, ECF No. 68 at 27, but, as KCN points out in its reply, ECF No. 149 at 2–3, the burden to withstand summary judgment is much tougher. Here, there is no genuine issue of material fact, and KCN is entitled to summary judgment on Plaintiff's breach-of-contract claim, whether it is based on the advertisement or EUA.

First, the Court will look to KCN's advertisement. Plaintiff avers that KCN offered him certain promises for services or options in the Access Media Program, namely "no limit to the songs [he] can own!" and that "once [he] purchased the music, [he] will always own it," ECF No. 4 at 25, that he accepted this offer when he purchased his digital media player and downloaded media, and that KCN breached the contract when the internal security timer made his digital media player inoperable. ECF No. 146 at 19–21. Plaintiff's claim fails on every essential element.

"Under Florida law, a breach of contract claim requires the plaintiff to plead formation of a contract, including offer, acceptance, consideration, and essential terms; material breach; and damages." *Garcia v. Diaz*, 752 F. App'x 927, 930 (11th Cir. 2018). Plaintiff does not cite any authority in support of his conclusory assertion that he entered into a contract with KCN based on the subject advertisement. ECF No. 149 at 6–7. To the contrary, the rule of thumb is that an enforceable contract does not arise from an offer contained in an advertisement. *See Izadi v. Machado (Gus) Ford, Inc.*, 550 So. 2d 1135, 1139 (Fla. 3d DCA 1989) (collecting cases); *see also Schultz v. American Airlines, Inc.*, No. 18-80633-CIV, 2018 WL 7287194, at *3 (S.D. Fla. Sept. 25, 2018), *report and recommendation adopted*, 2018 WL 7287149, at *1 (Oct. 11, 2018) ("It is well-established that, absent limited exceptions, advertisements do not constitute offers."). So too here. KCN's advertisement was not so "clear, definite, and explicit" that it could be reasonably interpreted as "language of commitment" or an "invitation to take action without further communication." *Schultz*, No. 18-80633-CIV, 2018 WL 7287194, at *3. Indeed, the advertisement explicitly required further action—the submission of an order form.

Even if this were the exceptional case where an advertisement constituted an offer (and thus a contract was formed when Plaintiff ordered

10

and purchased his digital media player), the record refutes Plaintiff's naked assertion that KCN breached a "promise" of indefinite ownership.  Plaintiff does not dispute that the discontinuation of the Access Media Program, and, consequently, the triggering of the internal security timer on his digital media player, was "at the sole discretion and direction of the [DOC]."  ECF No. 136-1 at 4.  Moreover, the fact that Plaintiff no longer has access to his downloaded media or functional use for his digital media player while incarcerated does not mean he has been deprived of permanent ownership over either.  *See Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) ("[T]here is a difference between the right to own property and the right to possess property while in prison.  Hatten was allowed to send the property he could not possess in prison to a place of his choosing, and therefore was not deprived of the property." (internal citations omitted)).  It is clear that KCN took deliberate steps so each inmate did not lose his or her ownership interest in a purchased media player and downloaded media, even if—because of DOC regulations—the inmate could no longer possess or use either while incarcerated.  Because Plaintiff maintains the options provided by KCN, notwithstanding his life sentence, there is no evidence from which a reasonable jury could find for Plaintiff on the elements of breach or damages.  Therefore, KCN is entitled to summary judgment.

Second, any breach-of-contract claim based on the EUA is without merit. For starters, Plaintiff expressly states that his claim does not rely on the terms of the EUA, ECF No. 146 at 20, so any such claim is deemed abandoned. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments."). Nevertheless, Plaintiff could not establish a breach of the EUA.³ As another federal court concluded when it examined an identical claim concerning the Access Media Program, the EUA does not "promise inmates permanent ownership of or access to purchased music." *Rodriguez v. JPay, Inc.*, No. 19-14137-CIV, 2019 WL 11624312, at *5 (S.D. Fla. Oct. 21, 2019). To the contrary, the EUA, in unambiguous language, expressly informs inmates that if "access is removed because of restrictions imposed by FDOC, there will be

---

³ The Court looks to Missouri law because the EUA contains a choice of law provision stating that the contract "will be governed by and construed in accordance with the laws of the State of Missouri." ECF No. 136-1 at 13. "In Missouri, "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist.*, 544 S.W.3d 214, 227 (Mo. Ct. App. 2017). This provision, however, does not govern the Court's consideration of Plaintiff's non-contract claims or those otherwise not based on the EUA. *Viridis Corp. v. TCA Global Credit Master Fund, LP,* 721 F. App'x 865, 875 n.11 (11th Cir. 2018).

no refunds." *Id.* Because that is what happened here, there is no evidence from which a reasonable jury could conclude that KCN breached the EUA. Therefore, KCN is entitled to summary judgment.

## B.   FDUTPA

KCN argues for summary judgment on Plaintiff's FDUTPA claim because there is no evidence in the record of any unfair or deceptive trade practice. ECF No. 136 at 21. In his response, Plaintiff recites the law on FDUTPA, echoes the Court's earlier conclusion that his Complaint stated such a claim, and asserts he was "deceived into believing that he would always be able to access his purchased music, to be able to purchase more music, and that he could retain the MP3 player, accessories, and music [Defendants] sold him and permitted him to purchase." ECF No. 146 at 21–25.

FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). A practice is deceptive if "there is a representation, omission or practice that

is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000).

Plaintiff has attempted to establish a misleading advertisement claim, the crux of which is that the business made an offer or promise that it did not intend to keep. *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002). There is no evidence of such intent. Plaintiff does not meaningfully refute KCN's sworn contention that it was DOC's decision "to enter into a new contract with a new private entity," not KCN's. ECF No. 136 at 21; *see also* ECF No. 136-1 at 2 ("FDOC terminated the contract and the Access Media Program[.]"). And, as explained above, Plaintiff still maintains ownership of the digital media player and downloaded media, just not immediate possession or use. *Rodriguez*, No. 19-14137-CIV, 2019 WL 11624312, at *7. Therefore, summary judgment on Plaintiff's FDUTPA claim is warranted.

**C.   § 1983 Due Process**

This leaves Plaintiff's sole constitutional claim. Typically, a plaintiff may not raise a constitutional violation against a private actor. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "[T]he mere fact

that a private actor contracts with a governmental entity does not mean that every action taken by the private actor can be attributed to the government." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278 (11th Cir. 2003). Instead, a plaintiff must establish the private party's "joint participation with a state official in a conspiracy[.]" *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 931 (1982); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (the "private party" must be "a willful participant in joint activity with the State or its agents").

KCN argues that Plaintiff's constitutional claim fails because there is nothing in the record to prove it is a state actor. ECF No. 136 at 21–25. Numerous federal courts have held that vendors such as KCN are not transformed into a state actor merely by virtue of a contract with state or government officials to sell commissary items to inmates. *See, e.g.*, *Whitehead v. Marcantel*, 766 F. App'x 691, 701 (10th Cir. 2019); *Means v. Rockland Cty. Corr. Facility*, No. 18-cv-8290 (CM), 2019 WL 1596489, at *4 (S.D.N.Y. Apr. 15, 2019). Plaintiff's allegations of "joint" participation by Defendants "in the advertisement and sale of" items as part of the Access Media Program and of a conspiracy to "deprive Plaintiff of his property" were sufficient to survive KCN's motion to dismiss, ECF No. 68 at 25–27,

15

and he rests on them in response to the instant motion, ECF No. 146 at 25–30.

Plaintiff, however, has not adduced evidence to refute KCN's sworn assertions that DOC terminated the Access Media Program contract and, further, that DOC in its "sole discretion and direction" disabled Plaintiff's digital media player using the internal security timer. ECF No. 136-1 at 2, 4. In other words, no reasonable jury could infer that KCN conspired with or jointly participated with DOC to deprive Plaintiff of his property. *See Bus. Realty Inv. Co. v. Insituform Techs., Inc.*, 564 F. App'x 954, 956 (11th Cir. 2014) (affirming the district court's grant of summary judgment because there was "no evidence that [the defendant] was anything other than an arms-length contractor with Jefferson County" or that "Jefferson County had so far insinuated itself into a position of interdependence with [the defendant] that [the defendant] was merely a surrogate for the state"); *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1284 (11th Cir. 2002) (to prove "willful participation" in a conspiracy to violate a person's constitutional rights, the plaintiff must "show some evidence of agreement between the defendants"). Plaintiff's suggestion that KCN should be held liable because it has "the technology, hardware, and/or means of removing the" internal security timer, ECF No. 146 at 30, is inconsequential because

KCN cannot do so (and return the digital media player to Plaintiff) without DOC's approval.

Because Plaintiff failed to establish KCN is a state actor subject to § 1983, KCN is entitled to summary judgment on this constitutional claim.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that KCN's Motion for Summary Judgment, ECF No. 136, should be **GRANTED**.

**IN CHAMBERS** this 19th day of February 2021.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.